UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RENEE MELENDEZ,

                                 Plaintiff,

vs.

NY COMMUNITY FINANCIAL, LLC,
COMMUNITY FINANCIAL SERVICE CENTER (CFSC),
THE CHECK CASHING PLACE, ANTHONY GUZZI,
MICHAEL HOFFER, FRANK PHIPPS, MAIRA PERALTA,
MARINA B. MELVIN, DAPHNE RODRIGUEZ,
CITY OF NEW YORK, and
DETECTIVE INVESTIGATOR MARIE-ELANA D'ANGELO,

                                 Defendants
------------------------------------------------------------------X

15 CV ____

**COMPLAINT**

**JURY TRIAL
DEMANDED**

## PRELIMINARY STATEMENT

1. This is an action to recover money damages arising out of defendants' violation of plaintiff's rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of New York. Plaintiff, a 30-year old mother of two boys, was arrested, prosecuted, and convicted of fraudulently cashing a stolen U.S. Treasury check. After enduring more than two years of anxiety, fear, humiliation, and suspension without pay from her job at the Social Security Administration, all charges against plaintiff were dismissed because it was determined that one or more tellers employed by Community Financial Service Center, d/b/a The Check Cashing Place (hereinafter "CFSC"), were the actual culprits and that plaintiff was innocent. The tellers and supervisors of CFSC purposely misrepresented and withheld facts from the Bronx DA's Office ("BXDAO"), maliciously causing plaintiff's prosecution and conviction. Additionally, the BXDAO's detective investigator who investigated the fraud with U.S. Secret Service agents knew or should have known that the tellers were the

actual perpetrators and not plaintiff; nevertheless she withheld this crucial information from the BXDAO, arrested plaintiff, and caused her to be maliciously prosecuted and wrongfully convicted.

## JURISDICTION AND VENUE

2. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1332, 1343(a)(3)-(4) and the aforementioned statutory and constitutional provision.

4. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims and causes of action.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c) and §1402(b) because the claims arose in this district.

## JURY DEMAND

6. Plaintiff demands trial by jury in this action.

## PARTIES

7. Plaintiff Renee Melendez is a citizen of the United States and currently resides in New York City as she did at the time when these events occurred.

8. Defendant NY Community Financial, LLC is a Delaware corporation authorized to conduct business in the State of New York and the owner and corporate entity of Community Financial Service Center d/b/a The Check Cashing Place (hereinafter "CFSC"). NY Community

Financial, LLC owns, operates, and controls all the CFSC branches throughout New York City and the Bronx and therefore all references to CFSC or The Check Cashing Place also implicates and involves NY Community Financial.

9.      Defendant Anthony Guzzi, was at all relevant times, the Director of Human Resources for NY Community Financial/CFSC. Defendant Guzzi was responsible for all hiring and retention of employees of NY Community Financial/CFSC, including the Fordham branch where tellers Marina B. Melvin and Daphne Rodriguez were employed. Defendant Guzzi is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of his employment with defendants NY Community Financial/CFSC.

10.     Defendant Michael Hoffer, was at all relevant times, a Regional Manager for NY Community Financial/CFSC. Defendant Hoffer supervised and managed all CFSC branches in the Bronx, including the Fordham branch where tellers Marina B. Melvin and Daphne Rodriguez were employed. Defendant Hoffer is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of his employment with defendants NY Community Financial/CFSC.

11.     Defendant Maira Peralta, was at all relevant times, the Store Manager for the Fordham branch of CFSC and the direct supervisor of defendants Marina B. Melvin and Daphne Rodriguez. Defendant Peralta is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of her employment with defendants NY Community Financial/CFSC.

12.     Defendant Frank Phipps, was at all relevant times, the Assistant Director of Loss Prevention and Collections for NY Community Financial/ CFSC. Defendant Phipps was responsible for loss prevention and collections for all of NY Community Financial/CFSC

branches, including the Fordham branch where defendants Marina B. Melvin and Daphne Rodriguez were employed. Defendant Phipps is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of his employment with defendants NY Community Financial/CFSC.

13. Defendant Marina B. Melvin, was at all relevant times, a teller at the Fordham branch of CFSC. Defendant Melvin is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of her employment with defendants NY Community Financial/CFSC.

14. Defendant Daphne Rodriguez, was at all relevant times, a teller at the Fordham branch of CFSC. Defendant Rodriguez is an agent and employee of defendant NY Community Financial who at all times acted or purported to act within the scope of her employment with defendants NY Community Financial/CFSC.

15. Defendant Marie-Elana D'Angelo, was at all relevant times, a detective investigator for the Bronx District Attorney's Office and an agent and employee of the City of New York. Defendant D'Angelo is being sued in her individual capacity.

16. Defendant City of New York ("City") is a municipal corporation existing by virtue of the laws of the State of New York.

17. At all times relevant in this Complaint, defendant D'Angelo acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York, and within the scope of her employment.

## STATEMENT OF FACTS

### The Crime

18.     On May 8, 2002, twenty-year old Renee Melendez opened an account with The Check Cashing Place. The Check Cashing Place created an account and a customer profile with Ms. Melendez's Learner's Permit photo identification, her signature, and a screen shot of her appearance. For the next ten years, plaintiff Renee Melendez would periodically cash checks there.

19.     Unbeknownst to plaintiff, on May 2, 2011, defendant Marina Melvin, a teller working at The Check Cashing Place located at 544 East Fordham Road in the Bronx, used plaintiff's account to cash a stolen U.S. Treasury (UST) check belonging to a man named Rene Melendez.

20.     Upon information and belief, defendants Melvin and Daphne Rodriguez, who also worked at the same location, were involved in a scheme where they cashed stolen or counterfeit U.S. Treasury checks through existing customers' accounts in exchange for cash payments.

21.     Plaintiff did not know defendants Melvin or Rodriguez and did not give either of them permission or authority to access or use her account to cash stolen or counterfeit checks.

22.     Defendants Melvin and Rodriguez knew or should have known that by using plaintiff's account to cash Mr. Melendez's stolen UST check, and by falsely denying their criminal conduct, plaintiff would be falsely and maliciously prosecuted for their crimes.

23.     Defendants Melvin's and Rodriguez's criminal acts, including the use of plaintiff's account to cash Mr. Rene Melendez's check, were discovered by their supervisors -- defendants Maira Peralta, Michael Hoffer, Frank Phipps, and Anthony Guzzi -- who terminated their employment with CSFC on May 16, 2011 for "fraud – accepted bribes to cash

stolen/counterfeit UST checks."

24.     NY Community Financial/CFSC's personnel files for defendants Melvin and Rodriguez conspicuously noted this reason for their termination on May 16, 2011.

**The Investigation**

25.     In June 2011, U.S. Secret Service Agent (SSA) Ken Premo was assigned to investigate Mr. Rene Melendez's missing U.S. Treasury tax refund check for $7,614.00. He determined that the check had been cashed at The Check Cashing Place at 544 East Fordham Road, Bronx, New York 10458.

26.     On August 11, 2011, SSA Premo contacted defendant Frank Phipps, the Assistant Director of Loss Prevention and Collections for The Check Cashing Place, to obtain information on the negotiation of the check.

27.     Defendants NY Community Financial/CFSC, Peralta, Hoffer, Guzzi, and Phipps, knew that their former employees Melvin and Rodriguez were responsible for fraudulently using plaintiff's account to cash Mr. Melendez's U.S. Treasury check when SSA Premo contacted defendant Phipps.

28.     Defendant Phipps withheld information implicating Melvin and Rodriguez and provided SSA Premo with information falsely implicating plaintiff.

29.     Defendants NY Community Financial/CFSC, Peralta, Hoffer, and Guzzi conspired with Phipps to withhold information implicating Melvin and Rodriguez and provide SSA Premo with information falsely implicating plaintiff.

30.     As a result of defendants NY Community Financial/CFSC, Peralta, Hoffer, Guzzi and Phipps conduct, plaintiff was later arrested, maliciously prosecuted and convicted for the crimes committed by defendants Melvin and Rodriguez.

31. SSA Charles Ross took over the investigation in March 2012.

32. SSA Charles Ross contacted plaintiff on March 26, 2012 and asked her to come to the field office to be interviewed.

33. Plaintiff cooperated and met with SSA Ross on April 3, 2012. SSA Ross falsely informed plaintiff that they had a screen shot of her cashing Mr. Melendez's UST check on May 2, 2011 at the Fordham branch of The Check Cashing Place.

34. Plaintiff truthfully informed SSA Ross that she had never seen Mr. Melendez's UST check, did not cash it, and had no knowledge of how it was negotiated under her name and account.

35. On the same day as SSA Ross's interview of plaintiff, defendant Marie D'Angelo, a Detective Investigator at the Bronx District Attorney's Office, was assigned to work with Ross on the investigation.

36. During the course of their investigation, SSA Ross and defendant D'Angelo learned that the teller, who negotiated Mr. Melendez's check, had been terminated for fraud by NY Community Financial/CFSC shortly after his check was cashed.

37. Despite having this information and no direct evidence that plaintiff cashed the UST check, defendant D'Angelo deliberately failed to pursue additional information about her termination because she knew that the information could lead to evidence that would defeat probable cause to arrest and prosecute plaintiff.

38. On or about the morning of September 17, 2012, while plaintiff was getting ready for work, defendant D'Angelo, SSA Ross and several other law enforcement officers appeared without warning or notice at plaintiff's home in Harlem. D'Angelo and Ross again falsely informed plaintiff that they had a screen shot of her cashing the UST check and tried to

intimidate her into making an admission. Plaintiff again stated that she was innocent.

39. Notwithstanding the knowledge that defendant Melvin had been terminated for fraud and no direct evidence that plaintiff cashed the check, defendant D'Angelo arrested plaintiff on September 19, 2012.

40. Before, during and after plaintiff's arrest and criminal prosecution, defendant D'Angelo purposely failed to inform prosecutors at the Bronx District Attorney's Office that the teller who negotiated Mr. Melendez's UST check had been terminated for fraud.

**Plaintiff's Arrest, Prosecution, and Conviction**

41. Defendant Phipps knowingly and falsely informed SSA Ross and prosecutors from the Bronx District Attorney's Office that plaintiff "entered The Check Cashing Place, presented her New York State Learner Permit and presented a United States Treasury Check made out to Rene H. Melendez, 1162 Union Ave. Apt. 3, Bronx, NY 10459-2372" causing plaintiff's arrest and a Criminal Court complaint to be filed against plaintiff on September 19, 2012.

42. Following her arrest on September 19, 2012, plaintiff was arraigned, released on her own recognizance, and the matter adjourned for grand jury action.

43. On April 5, 2013, defendant Hoffer knowingly and falsely testified in the grand jury that tellers at The Check Cashing Place require customers to present photo identification which they verify against the customer's account profile (i.e. date of birth, social security number, profile photo, and signature) before a check is cashed and then proffered plaintiff's account profile as evidence that plaintiff was the one who cashed Mr. Melendez's UST check, which he knew to be false.

44. Defendant Hoffer's false testimony caused plaintiff to be indicted on charges of

Grand Larceny in the Third Degree and Criminal Possession of Stolen Property in the Third Degree.

45.     Defendants Peralta, Phipps, and Guzzi knew the BXDAO was seeking to indict plaintiff for a crime that defendants Melvin and Rodriguez committed, yet they did nothing to inform the BXDAO that plaintiff was innocent.

46.     Defendants Peralta, Phipps, and Guzzi knew that defendant Hoffer was being called to testify in the grand jury against plaintiff about a crime that defendants Melvin and Rodriguez committee yet, they did nothing to intervene or inform the BXDAO that plaintiff was innocent and that Hoffer's testimony was false.

47.     Approximately two weeks after her arrest, plaintiff was suspended without pay from her job at the Social Security Administration.

48.     After appearing in court for almost two years, plaintiff's jury trial began in July 2014.

49.     Prior to the start of jury selection, defendant Hoffer met with Bronx Assistant District Attorney Tama Monoson. During those meetings with ADA Monoson, Hoffer continued to misrepresent the circumstances surrounding the cashing of Mr. Melendez's UST check and deliberately failed to disclose the reasons for defendant Melvin's termination.

50.     Also prior to the start of jury selection, defendant Phipps spoke with ADA Monoson and deliberately misrepresented the circumstances surrounding defendant Melvin's termination and failed to inform her that Melvin was the perpetrator, not plaintiff.

51.     Defendants Peralta and Guzzi knew that defendant Hoffer was meeting with ADA Monoson in connection with plaintiff's criminal trial yet they failed to come forward with the truth that defendant Melvin was the perpetrator, not plaintiff.

52. During plaintiff's trial, defendant Hoffer again knowingly and falsely testified that tellers at The Check Cashing Place require customers to present photo identification which they verify against the customer's account profile (i.e. date of birth, social security number, profile photo, and signature) before a check is cashed and then proffered plaintiff's account profile as evidence that plaintiff was the one who cashed Mr. Melendez's UST check, which he knew to be false. Hoffer deliberately omitted any mention of Melvin's termination and the reasons for her termination.

53. During the course of the criminal proceedings, including while plaintiff was on trial, defendant D'Angelo deliberately failed to inform prosecutors from the Bronx District Attorney's Office that the teller who negotiated Mr. Melendez's UST check had been terminated for fraud.

54. Defendant Melvin was not called to testify by the prosecution at plaintiff's trial.

55. On August 4, 2014, the jury found plaintiff guilty of Grand Larceny in the 4th Degree.

**Plaintiff's Exoneration**

56. After the guilty verdict, plaintiff's criminal defense attorneys subpoenaed the personnel files for the teller involved in the May 2, 2011 transaction.

57. In response to the subpoena, defendant Guzzi on behalf of NY Community Financial provided the personnel files of defendant Marina B. Melvin and Daphne Rodriguez.

58. Their files conspicuously contained evidence that Melvin and Rodriguez were terminated for taking bribes to cash stolen or counterfeit US Treasury checks under customers' accounts, including the use of plaintiff's account to cash Mr. Melendez's UST check.

59. As a result of the newly discovered evidence, plaintiff's conviction was vacated and all charges were dismissed against her on November 26, 2014.

60. Plaintiff was eventually reinstated at her job at the Social Security Administration in May 2015. However, she has not regained her loss of reputation or lost wages from the date of her suspension in October 2012 until November 26, 2014 -- the date of her exoneration.

61. Plaintiff's malicious prosecution that was caused by defendants resulted in plaintiff sustaining injuries including but not limited to mental and emotional pain and suffering, anxiety, humiliation, loss of liberty, loss of reputation, lost wages, paranoia, depression, post traumatic stress, flashbacks, isolation, and are ongoing.

62. Plaintiff timely filed a written notice of claim with the Comptroller's Office at 1 Centre Street, New York, New York. At least thirty days have elapsed since the filing of such notice and adjustment and/or payment has been neglected and/or refused.

63. This action has been commenced within one year and ninety days after the events upon which the claims are based.

### FIRST CAUSE OF ACTION
**Malicious Prosecution against D'Angelo**

64. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

65. The acts and conduct of defendant D'Angelo constitutes malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the United States Constitution. Defendant initiated and continued the criminal proceeding against plaintiff.

66. The criminal proceeding terminated in plaintiff's favor.

67. There was no probable cause for the commencement or the continuation of the criminal proceeding.

68. Defendant D'Angelo acted with actual malice.

69. Defendant was at all times an agent, servant, and employee acting within the scope of her employment for the City of New York and the District Attorney of Bronx County, which is therefore responsible for her conduct.

70. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear this federally based claim.

## SECOND CAUSE OF ACTION
**Malicious Prosecution against Guzzi, Hoffer, Peralta, Phipps, Melvin, Rodriguez**

71. The plaintiff repeats, reiterates and realleges each and every allegation as if the same were fully set forth at length herein.

72. The acts and conduct of defendants Guzzi, Hoffer, Peralta, Phipps, Melvin and Rodriguez constitute malicious prosecution under the laws of the State of New York. Defendants participated and aided in the malicious prosecution of plaintiff by providing false information to law enforcement. Defendants caused there to be commenced and continued a criminal proceeding against plaintiff. There was actual malice and an absence of probable cause for the proceeding. In addition, the proceeding terminated favorably to plaintiff when the government moved to dismiss the charges.

73. Defendants were at all times agents, servants, and employees acting within the scope of their employment with NY Community Financial/CFSC dba The Check Cashing Place which are therefore responsible for their conduct.

74. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction

to hear and adjudicate such claims.

## THIRD CAUSE OF ACTION
### (42 .S.C. §1983; Denial of Due Process and a Fair Trial Against D'Angelo)

75. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76. Defendant D'Angelo initiated or caused the initiation of criminal proceedings against plaintiff.

77. Prior to plaintiff's conviction on August 4, 2014, and continuing until her exoneration on November 26, 2014, defendant D'Angelo withheld knowledge from BXDAO prosecutors that the teller who negotiated Mr. Melendez's UST check was terminated for fraud shortly after the check was cashed. This information constituted *Brady* material.

78. Defendant D'Angelo knew she had a duty under the United States Constitution as well as the laws and regulations of the State and the City of New York (a) to disclose *Brady* information to the Bronx County District Attorney's Office so that it could be disclosed to the defense and used to prevent the conviction of plaintiff based upon false, misleading, or incomplete evidence and argument, and/or (b) to make truthful statements to the prosecution concerning the existence of *Brady* material and not to cause or continue plaintiff's unconstitutional conviction and resultant injuries by lying about such evidence.

79. Notwithstanding her awareness of her duties, defendant D'Angelo, prior to, during, and following plaintiff's trial, intentionally, recklessly, and/or with deliberate indifference to her legal obligations, concealed *Brady* information from, lied about, and otherwise failed to disclose *Brady* to plaintiff.

80. She did so with the knowledge that her conduct would result in the jury being provided a false or misleading picture of the circumstances surrounding the cashing of Mr.

Melendez's check and would thereby substantially increase the likelihood of a conviction, in violation of plaintiff's federal constitutional rights.

81. The aforesaid conduct of defendant D'Angelo operated to deprive plaintiff of her right to due process and a fair trial under the Fourteenth Amendment of the United States Constitution.

## FOURTH CAUSE OF ACTION
### Negligent Hiring, Retention, Training and Supervision

82. The plaintiff repeats, reiterates, and realleges each and every allegation as if fully set forth at length herein.

83. NY Community Financial/CFSC dba The Check Cashing Place and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise defendants Melvin and Rodriguez, individuals who were unfit to perform the duties of cashier of checks.

84. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FIFTH CAUSE OF ACTION
### Negligence

85. The plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if more fully set forth at length herein.

86. As a customer of CFSC, plaintiff was owed a duty of care. NY Community Financial/CSFC dba The Check Cashing Place breached that duty of care through its agents, servants, and employees by acting with negligence and plaintiff sustained harm proximately caused by defendant's negligence.

87. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction

to hear and adjudicate such claims.

## JURY DEMAND

88. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by plaintiff as a result of the events alleged herein.

2. Punitive damages against the Individual Defendants in an amount to be determined at trial.

3. Pecuniary damages due to lost wages.

4. For pre-judgment interest as allowed by law.

5. An order awarding plaintiff reasonable attorneys' fees, pursuant to 42 U.S.C. §1988, together with the costs of this action.

6. Such other further relief as the Court may deem appropriate.

DATED:   November 25, 2015
         New York, New York

                                ROMANO & KUAN, PLLC

                                [signature]
                                Julia P. Kuan (JK 3822)
                                600 Fifth Avenue, 10th Floor
                                New York, New York 10020
                                (212) 763-5075
                                julia.kuan@romanoandkuan.com

                                *Attorneys for Plaintiff*